BORDEN, INC., a New Jersey corporation, and Tom J. Ness, Plaintiffs,

v.

UNITED DAIRY WORKERS PENSION PROGRAM and its Trustee, National Bank of Detroit, in its capacity as Trustee of said Pension Program only, and the United Dairy Workers Pension Program Pension Fund Committee and its Members, John Carney, Robert Williams, Milton Economo, John Baranowski, William Bancroft, Henry Lorence and Robert Kendall, in their capacity as members of said Pension Fund Committee, Defendants.

Civ. A. No. 81–71372.

United States District Court, E. D. Michigan, S. D.

July 8, 1981.

---

Lawrence G. Campbell, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for plaintiffs.

William M. Mazey, Rothe, Mazey, Mazey & Hamburger, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case came before the court on plaintiffs' motion for a preliminary injunction. After taking evidence and entertaining oral argument on the issues involved, the court granted in substantial part plaintiffs' motion. This memorandum sets forth the reasoning of that ruling.

This case involves the effect to be given to recent amendments to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, §§ 1381 *et seq.*, in a situation in which the amendments operate to alter the obligations of the plaintiff employer. Plaintiffs in this action are Borden, Inc., one of several employer participants in a multi-employer pension fund, and Tom Ness, a member of the Pension Fund Committee which administers the Fund. Mr. Ness is a Borden representative on the Committee. Defendants are the United Dairy Workers Pension Fund, its trustee, and seven of the Fund Committee members. The Fund Committee is comprised of ten members, five of whom are appointed by the union, and five of whom are appointed by participating employers. None of the Committee member defendants is a representative of plaintiff Borden.

Plaintiff Borden's employees at three plants are represented by the United Dairy Workers. Pursuant to collective bargaining agreements entered into between the union and Borden, Borden participates in the United Dairy Workers Pension Program, a multi-employer pension plan within the meaning of ERISA. The three collective bargaining agreements entered into between the parties have effective dates of December 1, 1978 to December 1, 1981; August 1, 1979 to October 1, 1982; and September 1, 1979 to December 1, 1982. Borden's employees represent approximately 80% of the active participants in the Pension Plan.

At the time plaintiffs filed suit, the Pension Plan enjoyed funded status. Plaintiffs filed suit to obtain a preliminary and permanent injunction against action by the Committee to increase the benefit factor for participants, which increase would have had the effect of throwing the Plan into an unfunded position. Plaintiffs asserted that such an increase would violate the fiduciary duties owed to participants and beneficiaries under the Plan in that the increase would be imprudent in light of a decline in the dairy industry and in the number of active participants in the Plan.* Plaintiffs also asserted that a significant change in ERISA operates to alter the obligations entered into under the collective bargaining agreements, and that an increase in the benefit factor would, under the ERISA amendments, result in substantial unbargained for liability on Borden's part. Borden thus sought injunctive relief to retain the status quo until it bargained with the union over an increased benefit factor.

The collective bargaining agreements in this case require a certain contribution rate by Borden. The benefit factor, however, is set by the Committee under the terms of the Pension Plan itself:

Section 3. The Pension Fund Committee shall have the authority and responsibility of administering the Plan, and interpreting its provisions. The power of the Pension Committee shall include (but not be limited to) the following:

\* \* \* \* \* \*

(c) Establishment of the benefit factor and maximum monthly amount as provided in Article VII, Section 1.

The Plan provides no express limits on the ability of the Committee to adopt benefit increases, and the only limitations on its exercise of authority are found in ERISA's imposition of fiduciary duties on persons such as the members of the Committee in this case. 29 U.S.C. § 1104.

The ERISA amendments which plaintiffs claim should operate to modify the authority of the Committee to increase the benefit factor are found in Subtitle E of the Act, 29 U.S.C. §§ 1381 *et seq.* These amendments later the liability of an employer who withdraws from a multi-employer plan, and were enacted in September of 1980, after each of the three collective bargaining agreements was entered into by the union and Borden. The provisions of the amendments are best understood in relation to prior law.

Prior to the September amendments, employers who withdrew from a multi-employer pension plan had no obligation to fund the liabilities of the plan provided that the plan continued in existence for five years following the date of withdrawal. Employers who remained with a plan until it terminated, or who withdrew within five years of termination, on the other hand, were liable to the Pension Benefit Guaranty Corporation for unfunded guaranteed benefits up to 30% of net worth. The effect of these provisions is set forth in the legislative history of the amendments.

Thus, contributors who remain in the plan and newly entering contributors have the burden of funding the unfunded benefit obligations for employees of a withdrawn employer.

The capacity of a multiemployer plan to meet its benefit commitments depends on the maintenance of a stable or growing contribution base. Discrete instances of withdrawal will not affect the soundness of a plan if the withdrawn employer is replaced by newly entering contributors or expansion of covered employment with other contributing employers. If employer withdrawals are accompanied by a decline in the industry, trade, or craft covered by the plan, however, the resulting funding burden on remaining contributors and active employees may be intolerably high. In highly competitive or marginal industries, such increased costs may make the plan unattractive so that new employers are discouraged from

---

\* Because of the resolution of plaintiffs' motion made in this opinion, the court finds it unnecessary to resolve the issue whether the planned

increase in the benefit factor would violate the fiduciary obligations set forth in ERISA.

coming into the plan. The solvency of the plan is then threatened, particularly where benefit improvements have been funded over unrealistically long periods of time.

\* \* \* \* \* \*

In the case of a financially troubled plan, termination liability creates an additional incentive for employers to withdraw early. In such a plan, contribution increases may be escalating so sharply that termination liability may prove cheaper than continuing the plan. Where active employees determine that benefits may be provided for them at considerably less cost than current contributions and are satisfied that vested benefits for retirees and others are virtually 100 percent covered by the guarantees, there is an incentive for the union to agree to terminate the plan. The result is to transfer the cost of providing benefits to the insurance system. The current termination insurance provisions of ERISA thus threaten the survival of multiemployer plans by exacerbating the problems of financially weak plans and encouraging employer withdrawals from and termination of plans in financial distress. H.R. Rep.No.96–869, 96th Cong. 2d Sess. (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 2918, 2921–23.

The September 1980 amendments to ERISA seek to alleviate the problems noted above in the legislative history by requiring withdrawing employers to continue funding a proportional share of the plan's unfunded benefit obligations. This requirement exists regardless of whether the employer withdraws more than five years prior to the termination of the plan. Thus, a withdrawing employer's liability, formerly "contingent" under the prior law, is now "absolute" under the amendments.

The purpose is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers. *Id.* at 2935.

As noted above, the amendments to ERISA were enacted after the collective bargaining agreements between Borden and the union were entered into. Based on this, Borden argues that the change in law effects an alteration of its obligations under those agreements. Borden asserts that the grant of power to the Fund Committee to set the benefit factor was granted at a time when its withdrawal liability was contingent instead of absolute, and that the change in the law thus expands upon the Committee's powers in a manner not contemplated by Borden. Borden argues that its ability to withdraw from this Pension Plan is thus affected by the change in the law, and concludes that the Committee should not be able to unilaterally, without authorization from Borden, increase the benefit factor and thus expose Borden to substantial liability under the amendments.

Defendant Pension Program argues in opposition to Borden that the power to set the benefit factor is granted to the Committee under the terms of the Pension Plan itself, and that the court cannot sit as an "ex officio" member of the Committee. Defendant also argues that the Pension Benefit Guaranty Corporation is the proper entity to complain to and to file a civil action to obtain the relief sought, not Borden. For the following reasons, the court finds the position of the plaintiff persuasive.

■ As a preliminary matter, it is clear that the Pension Benefit Guaranty Corporation is not, as defendant asserts, the proper entity to bring this action. The provision relied on by defendant for this proposition, 29 U.S.C. § 1303, relates to the investigatory authority of the Pension Benefit Guaranty Corporation and its right to bring civil actions with regard to violations of Subchapter III of ERISA which relates to Plan Termination Insurance. The statute relied on by defendant does not in any way limit or even apply to plaintiffs' rights to obtain the relief sought.

A party seeking preliminary injunctive relief bears the burden of demonstrating the existence of four prerequisites to relief:

(1) a substantial likelihood that the moving party will prevail on the merits; (2) irreparable injury; (3) overriding harm to plaintiff relative to defendant if relief is denied; and (4) the public interest is served by issuance of the injunction. *Pennwalt Corp. v. Zenith Laboratories*, 472 F.Supp. 413 (E.D.Mich.1979). Each element is discussed below.

### Success on the Merits

Plaintiff Borden in this case entered into agreements under which it participates in a Pension Plan administered by a Committee which has the authority to set the benefit levels of the participants and beneficiaries. The agreements under which Borden participates in this Plan were entered into at a time when there was no absolute liability on the part of the employer if it withdrew from the Plan. The Plan currently enjoys funded status, an enviable position, and one which is encouraged by ERISA itself. Plaintiff Borden seeks to prevent the Committee from exercising its authority under the terms of the Plan by increasing the benefit factor, when the increase would throw the Plan into an unfunded position and thereby impose on Borden significant liability in the event that it withdrew from the Plan.

■ This court is persuaded that the imposition of liability under the ERISA amendments does operate to impose on Borden unbargained for obligations and that this change in law was not one which could have been foreseen by the parties when entering into the collective bargaining agreements. Such obligations should not be imposed on a contracting party absent a meeting of the minds. The decision to grant the Committee unfettered authority to set the benefit factor under the conditions existing prior to September of 1980 should not be binding on the employer under the conditions existing today.

Borden's employees, as noted above, constitute approximately 80% of the active participants in this Plan. Plaintiffs assert that the increased benefit factor would result in approximately $1 million in unfunded liabilities. Borden's share of this liability would thus be approximately $800,000. Moreover, if Borden chose to withdraw from this Plan its liability would be absolute for this unfunded liability. Even if the amount of Borden's liability were substantially less, as defendant contends, and is closer to $500,000, it is clear that the conditions under which Borden agreed to participate in this Plan have been drastically altered by law.

Moreover, the Plan in this case currently enjoys fully funded status. Such a Plan offers full protection for its participants. Having achieved this position, the court believes it should be impermissible for the Committee to "regress" the status of the fund when to do so would impose unbargained for liability on the employer plaintiff.

Thus, the court concludes that plaintiffs have shown a substantial probability of success on the merits of this law suit.

### Irreparable Injury

■ The injury with which plaintiff Borden is threatened in this case is readily apparent: the imposition of substantial liability in the event that it withdraws from this Plan. In response to this, defendant argues that in the event that plaintiffs' position is upheld on a trial on the merits, Borden can recoup the financial loss by retroactively reducing the benefits for participants. This resolution to the problem, however, would necessarily cause both administrative problems as well as significant trauma to the participants themselves.

The change in the statute governing the administration of this Plan severely limits Borden's ability to withdraw from the Plan, and because of this, the Committee should not be allowed to unilaterally increase the benefit factor and impose this unbargained for liability on plaintiff.

### Balance of Harm

In contrast to the harm threatened plaintiff Borden if this injunction were not granted, the harm threatened defendant Plan if it is granted is minimal. In the event that the defendant Plan prevails on the merits of this suit, retroactive benefits can be made to the participants in the Plan.

On the other hand, if the benefit factor increase were allowed to go into effect at this time, and the plaintiff were to prevail on the merits of this suit, plaintiff would have to recoup its current position by a retroactive reduction in benefits. As noted above, this is an undesirable "solution" to the problem, and could well pose more problems itself.

*Public Interest*

Assessing where the public interest lies in a case such as this is no easy task. On the one hand, there is a significant public interest in providing adequate pension benefits for retirees to insure that they are adequately provided for in their old age. The court cannot help but be aware of the difficulties faced by persons living on fixed incomes in times of high inflation. On the other hand, however, is the public interest in maintaining the soundness of pension funds, a state which has been achieved by the funded status enjoyed by the Plan in this case.

Moreover, the public interest is served as well by maintaining the agreement reached between the parties in this case, and by limiting the obligations of a contracting party to those to which it truly agreed. This opinion does not in any way stand for the proposition that the benefit factor for this Plan can never be increased in a manner that will result in its unfunded status. Rather, this opinion simply stands for the proposition that such a change in status should be effected only after the employer has agreed to it, in light of the September 1980 ERISA amendments.

The court thus concludes that injunctive relief is warranted in this case. However, the reasoning behind this ruling does not extend so far as to prohibit any benefit factor increase at all, but only one which will throw the Plan into an unfunded position. Thus, if the Plan is able to bear an increase in the benefit factor which will not throw it into an unfunded position and which will thus not affect Borden's withdrawal liability, such an increase would be permissible under this ruling.

In summary, plaintiffs' motion for a preliminary injunction is granted to the extent that the Committee is enjoined from increasing the benefit factor in any manner which would result in an unfunded position for the Plan.

So ordered.